```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
JOHN I. ODE,                             :
                                         :
                  Plaintiff,             :    04 CIV. 9632 (DLC)
                                         :
        -v-                              :    OPINION & ORDER
                                         :
MOUNT SINAI MEDICAL CENTER and MOUNT     :
SINAI HOSPITAL,                          :
                                         :
                  Defendants.            :
                                         :
-----------------------------------------X
```

Appearances:

For plaintiff John Ode:

David Abrams
Attorney at Law
305 Broadway, 9th Floor
New York, NY 10007


For defendants Mount Sinai Medical
Center and Mount Sinai Hospital:

Rory McEvoy
Jennifer Frattini
Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, NY 10022


DENISE COTE, District Judge:

Defendants Mount Sinai Medical Center and Mount Sinai Hospital ("Mount Sinai") have moved for summary judgment on all the claims brought against them by their employee John Ode ("Ode"). Ode was discharged in January 2004 following an absence for health reasons. He was reinstated approximately a year later. Ode claims that the termination of his employment violated federal civil rights laws and the Family Medical Leave Act ("FMLA"). For the following reasons, Mt. Sinai is entitled

to summary judgment on the employment discrimination claims, but the FMLA claim must proceed to trial.

## Background

The following facts are not in dispute or are taken in the light most favorable to the plaintiff, unless otherwise noted. John Ode, who is black, was hired as a security officer in Mount Sinai's Security Department in February 2002. While Ode was employed at Mount Sinai the Director of Security was Carmen Fascia ("Fascia") and the Assistant Director of Security was Robert Pickett ("Pickett"). Fascia is white and Pickett is black.

The Security Department required employees to call in at least two hours before the start of a shift when missing work due to illness or injury. The call-in procedure was explained to Ode during his orientation. Mt. Sinai asserted that Ode had violated this policy when it fired him in early 2004.

Ode contends that his absences from work were largely due to recurring health problems stemming from a workplace accident in 2002. On September 1, 2002, Ode hit his head on a pipe while on patrol at Mt. Sinai. Ode was treated at the Mt. Sinai emergency room. On the advice of Ode's personal physician, Dr. Jeffrey Gross ("Dr. Gross"), Ode did not return to work following the accident until September 10. Following this accident, Ode began to experience neck pain. Ode did not tell his supervisors about his problems with his neck because he wanted to keep this

2

personal information private.

On July 9, 2003, Ode visited Dr. Gross because he had a cold, a headache and was again experiencing neck pain. Dr. Gross gave the plaintiff a note excusing him from work, which plaintiff faxed to Mt. Sinai. The July 9 note stated that Ode was unable to work "due to neck pain/cold" and that he would be able to return to work on July 17.

On October 8, Ode received a "first warning" for "patterned" excessive absenteeism and conduct detrimental to medical center operations. The written warning explained that Ode had been

> sick/absent Eight (8) days on Five (5) occasions. This is considered excessive. Three of the Five occasions were connected to scheduled time off. This is considered patterned. Any recurrence of a similar nature may result in further disciplinary action up to and including termination. Additionally, you are required to provide proof of illness for every occasions [sic] of sick/absence until January 8, 2004.

On November 1, Ode was given a "final warning" due to an incident that occurred while Ode was working on October 26. On December 9, a final warning with a three day suspension was issued due to an allegation that Ode was absent from his assigned post on December 3.

Ode was absent from work from December 26 to January 11, 2004. On December 26, 27 and 28, Ode telephoned and notified Mt. Sinai that he was sick and wouldn't be able to come into work. Ode claims that he also called in on December 29 and 30. Mt. Sinai has no record of those calls. On December 29, one of Ode's supervisors telephoned him at home to inquire about his absence. Ode asserts that he informed him that he had been sick since

3

Friday, December 26, and would also be out on December 30.

On December 30, Ode again visited Dr. Gross. After examining Ode, Dr. Gross faxed a note to Mt. Sinai which stated the Ode was unable to work between December 26 and 30 "due to severe neck pain." It added that he was able to return to work. After a January 5 visit to Dr. Gross, the doctor faxed another note to Mt. Sinai stating that Ode could return to work as of January 11.

On January 5, 2004, Fascia and Pickett, in consultation with Mt. Sinai's Labor Relations Department, decided to discharge Ode because he had failed to call in on December 29 and 30 and that failure represented the third incident of unauthorized absence in one year. Pickett's discharge report stated that Ode had been scheduled to work on December 29, and that he had failed to notify Mr. Sinai of his absence. It continued, "[w]hen a supervisor contacted you at home, you stated you were tired. On 12/30/03, you were again scheduled to work and failed to call that you would not be in. You subsequently faxed in a doctor's note after the shift began."

On January 12, Pickett met with Ode and told him that he had been discharged, effective January 6, for not calling in on December 29 and 30. Ode argued that he had called in. He was told that he had to bring his records to prove that he had called. Ode presented his telephone records, but his efforts were unavailing. Mt. Sinai was not satisfied that the records proved that he had called and his discharge remained in effect.

In October 2004, an attorney representing Ode contacted Mt. Sinai and stated that Ode had telephone records showing that he had contacted the hospital on December 29 and 30. The records were again provided to Mt. Sinai. This time it was determined that the records established that Ode had satisfied the hospital's call-in policy on December 29 and 30. On December 31, 2004, Mt. Sinai reinstated Ode.

Meanwhile, on March 1, 2004, Ode filed a charge of discrimination against Mt. Sinai with the New York State Division of Human Rights ("SDHR") alleging that his employment had been terminated because of his race and color. On June 24, 2004, the SDHR issued a Determination finding that there was no probable cause to believe Ode's allegation. The Equal Employment Opportunity Commission adopted the Determination and issued Ode a Notice of Right to Sue, dated July 30, 2004.

Ode claims that Mt. Sinai's decision to discharge him was impermissibly motivated by his race. Ode supports his claim by pointing to an alleged disparity in Mt. Sinai's treatment of an Hispanic security officer Eiry Nunez ("Nunez"). Nunez was absent from work for five days in November 2003 and did not call in during his absence. While Nunez did not call in, he did provide Mt. Sinai with a doctor's note <u>before</u> his absence stating that he was scheduled to have surgery and would be forced to miss work.

Ode filed his complaint on December 8, 2004, alleging violations of the FMLA, Title VII of the 1964 Civil Rights Act ("Title VII"), and the 1866 Civil Rights Act. The defendants

have moved for summary judgment on all claims.

## Discussion

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 465 (2d Cir. 2000). The same standard is applied in employment discrimination cases as in all others. Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133 (2000)). Thus, even though the evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in its favor, "the test for summary judgment" even in discrimination cases "is whether the evidence can reasonably support a verdict in the plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000); see also Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001) ("A court is to examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." (citation omitted)).

A.  Race Discrimination

Ode's claims of discrimination on the basis of race are analyzed under the burden-shifting framework first established in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[1] The initial burden falls onto the plaintiff to establish a prima facie case of discrimination. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 142 (2000). If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. The defendant's burden is one of production, not persuasion. Id. If the employer meets its burden, "the McDonnell Douglas presumptions disappear from the case," James, 233 F.3d at 156, and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against him because of his race." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

To establish a prima facie case of discriminatory discharge, a plaintiff must establish that he (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination on the basis of membership in the protected class. Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 91 (2d Cir. 2001). The burden of establishing a prima facie case to support a claim of employment discrimination is minimal.

---

[1] Ode's claim under the 1866 Civil Rights Act, 42 U.S.C. § 1981, is analyzed under the same burden shifting framework as his claim under Title VII. See Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988).

McGuiness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001).

With respect to the fourth element of the prima facie case, a plaintiff may carry his burden "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). In order to raise an inference of discrimination, the plaintiff must be "similarly situated in all material respects" to the individuals with whom he seeks to compare himself. Shumway v. United Parcel Serv., 118 F.3d 60, 64 (2d Cir. 1997) (affirming finding that plaintiff failed to present prima facie evidence of discrimination). "A plaintiff is not obligated to show disparate treatment of an identically situated employee" when presenting prima facie evidence of discrimination, but the object of comparison "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuiness, 263 F.3d at 54.

Ode has failed to establish any inference of discrimination. Ode relies exclusively on a comparison between his termination, allegedly for failure to follow the call-in procedure on December 29 and 30, and the treatment afforded to Nunez, an Hispanic Security Officer, who did not call in during a five-day absence and yet was not discharged. Ode and Nunez are not similarly situated. It is undisputed that Nunez received permission for his absence beforehand and as a result was not obligated to call

8

in.  Because Nunez was not required to call in, the fact that he was not discharged does not raise an inference of discriminatory motive in the decision to terminate Ode.  Because plaintiff has failed to establish an inference that he was discriminated against because of his race, he has failed to establish a prima facie case of discriminatory discharge.

Even if the plaintiff is deemed to have met his initial burden, the defendant is entitled to summary judgment on the discrimination claims.  Mt. Sinai has shown a non-discriminatory reason for firing Ode, that is, its belief that Ode had not called to report his absence from work.  Even though Ode has presented evidence to raise a question of fact as to whether he timely called the hospital, he has not presented evidence from which one could reasonably infer that the defendant intentionally discriminated against him because of his race.  See James, 233 F.3d at 156-57.  As already explained, the comparator he has selected to show discriminatory intent was not similarly situated.

B.  FMLA

The FMLA requires covered employers to grant employees who have worked for twelve months up to twelve weeks' leave during any twelve month period "for, inter alia, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Hale v. Mann, 219 F.3d 61, 68 (2d Cir. 2000) (citing to 29 U.S.C. § 2612(a)(1)(D)).  Among other things, the FMLA provides protection in the event that an

9

employer interferes with an attempt by an employee to exercise rights under the statute: "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Ode claims that his employment was terminated because he exercised his rights under the FMLA.

Ode's claim for retaliation under Section (a)(1) of the FMLA is governed by McDonnell Douglas burden shifting analysis. Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam); see also Sista v. CDC IXIS North America, Inc., 445 F.3d 161, 176 (2d Cir. 2006). In order to prevail Ode must show, inter alia, that his termination gives rise an inference of retaliatory intent. Potenza, 365 F.3d at 168.

One definition of a serious health condition is an injury or illness requiring "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). FMLA regulations list several categories of conditions which fall under subsection (B), including a "chronic serious health condition." See 29 C.F.R. § 825.114(a). A "chronic serious health condition" is defined as a condition which involves periodic visits to a health care provider for treatment, lasts over extended period of time, and may cause episodic periods of incapacity. Id. at § 825.114(a)(2)(iii).

In order to be protected by the FMLA, an employee must provide the employer with appropriate notice of an absence. 29 C.F.R. §§ 825.302(c), 825.303(b). There are separate regulations

that apply when the need for FMLA leave is foreseeable, and when it is not. In the case of a foreseeable need, notice should be given at least 30 days in advance if possible, or "as soon as practicable." Id. at § 825,302(a). Ordinarily this means one to two business days of when the need for leave becomes known to the employee. Id. at § 825.302(b). An employer is expressly authorized to require an employee "to comply with the employer's usual and customary notice and procedural requirements for requesting leave." Id. at § 825.302 (d).

> When the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.

Id. at § 825.303(a). The employee is permitted by the regulations to provide telephone or facsimile notice. Id. at § 825.303(b).

The regulations also address the content of the notice that should be given. The regulations for foreseeable and unforeseeable leaves differ in this regard. In the case of a foreseeable need for leave, the regulations require an employee to

> make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example. The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary

11

details of the leave to be taken.
Id. at § 825.301(c).

In the case of an unforeseen need for FMLA leave, the regulations are less extensive. They provide that, "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." Id. at § 825.303(b).

Thus, in assessing notice under the FMLA, "[t]he critical question is whether information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Walton v. Ford Motor Co., 424 F.3d 481, 486 (6th Cir. 2005) (citation omitted). When it comes to the timing of the notice and its content, "[w]hat is practicable ... will depend upon the facts and circumstances of each individual case." Id. (citation omitted).

Ode has presented sufficient evidence to raise issues of fact as to whether he complied with Mt. Sinai's notice procedures and whether he provided adequate and timely notice as required by the FMLA that he was suffering from a serious health condition. It is undisputed that on December 26, 27, and 28, Ode advised Mt. Sinai that he was sick. He contends that he called Mt. Sinai in advance of his shift on December 29 to inform the hospital that he would be out for another day and that in a telephone call with Mt. Sinai later that day he informed the hospital that he was ill and would also be out on December 30. Dr. Gross's note informed Mt. Sinai on December 30 that Ode was "unable to work due to

12

severe neck pain." Thus, accepting the evidence in the light most favorable to Ode, there is an issue of fact as to whether these statements triggered the defendants' duty to conduct further inquiry to determine whether Ode's medical condition qualified as a serious health condition and was covered by the FMLA. There is no evidence that defendants made such an effort.

## Conclusion

Defendants' motion for summary judgment is granted on Ode's claims of discrimination based on race and denied on Ode's FMLA claim.

Dated: New York, New York
June 22, 2006

_____
DENISE COTE
United States District Judge